**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CENTRAL GROCERS, INC., *et al.*, ) <br>         Debtors. ) <br> _____ ) <br> HOWARD B. SAMUELS, ) <br> solely as chapter 7 ) <br> trustee of the estates of CENTRAL ) <br> GROCERS, INC., *et al.*,[1] ) <br>         Plaintiff, ) <br> v. ) <br> JAMES J. CASACCIO, THOMAS J. ) <br> CASACCIO, LEAMINGTON FOODS, ) <br> INC., CASACCIO BROTHERS, INC., ) <br> MARKET FRESH, INC., and MARKET ) <br> FRESH NORTH, INC. ) <br>         Defendants. ) | Chapter 7 <br><br> Case No. 17-13886 <br> (Jointly Administered) <br><br> Hon. Pamela S. Hollis <br><br><br> Adversary No. 18-00734 |

**AMENDED AFFIRMATIVE DEFENSES**

Now come the Defendants, James J. Casaccio, Thomas J. Casaccio, Market Fresh, Inc., and Market Fresh North, Inc., collectively ("Defendants") through their undersigned attorneys, and for their Amended Affirmative Defenses state:

**Affirmative Defense I**
**Breach of Contract By CGI**

1. Central Grocers offered Market Fresh North ("North") an "Expansion Loan" ("Loan"). The express purpose of the Loan, and the only bias on which CGI made the Loan, is stated in Section I of the MEMBER LOAN POLICY & PROCEDURE CENTRAL GROCERS, INC. ("Policy") attached as an exhibit to Plaintiff's Complaint. The Policy is an express part of the documents that comprise the Loan to North.

---

[1] The Debtors in these Chapter 7 cases, along with the last four of each debtor's federal tax identification number, as applicable, are Central Grocers, Inc. (3170), Strack and Van Til Super Market, Inc. (2184), and SVT, LLC (1185).

1

Section I of the Policy states:

I.  Purpose of Member Loans Subject to certain Member Loan policies, procedures and qualifications established by the Company, which may be amended from time to time by the Company's Board of Directors (the "Board") without notice to the full membership, the Company may, but is under no obligation to, extend or advance Member Loans to qualifying members of the Company who are in good standing. The Member Loans shall be used for purposes of purchasing inventory, expanding, developing a member's store, acquiring assets with the specific intention to increase its market share and presence within its grocery market, to promote wholesale volume growth, and any other lawful purposes approved by the Company (the "Authorized Purposes"). Management of the Company is authorized, directed, and empowered to consider, execute, fund, and disburse Member Loans in accordance with the policies and procedures set forth herein.

2.  In fact, the loan was so tied to CGI providing increased inventory to North to allow it to expand that the loan was based on North's weekly purchases from CGI and the square footage of the contemplated expansion of North's grocery store. Section III.1.A. specifically provides:

A.  Expansion Loans.

A Requesting Member may apply for a Member Loan up to:

(i) ten times (10x) its projected increase in weekly purchases; or (ii) fifteen times (15x) the total square footage of the Requesting Member's new store or the portion of the Requesting Member's existing store in which the Requesting Member is expanding, to a maximum loan amount of FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($500,000.00) per retail store owned by Requesting Member (an "Expansion Loan"), if the Company's loan qualification requirements are met by the Requesting Member.

3.  The promissory Note at issue in fact expressly confirms the intention that this is a loan for North's expansion of its store so that it could purchase additional inventory from CGI. The title of the Promissory Note states:

**PROMISSORY NOTE**

**Market Fresh North, Inc. –Expansion Loan**

James Cassaccio, as an owner of North and a Guarantor on the Loan executed a Business Purpose Affidavit related to the "Expansion Loan." The Business Purpose Affidavit expressly requires that the Loan proceeds are used for expansion of the North grocery store. The Affidavit states, in relevant part, as follows:

    2.    That the nature of Affiant's business through its corporation is as follows: to operate a grocery store (or stores) for profit.

    3.    That the purpose of the Loan is as follows: to expand, remodel, and develop its Oak Park, Illinois grocery store location.

    4.    That the proceeds from the Loan, if granted, will be used solely to expand and develop its Oak Park, Illinois grocery store location.

    4.    The Policy provides that CGI would be North's "primary supplier" of goods. In fact, North was required to buy no less than 80% of its goods from CGI. CGI therefore had a corresponding obligation to sell North at least eighty percent of its inventory. Section 9.B. of the Policy states:

    B.    Company must remain the Member/Borrower's "Primary Supplier" of grocery goods and inventory. The term "Primary Supplier" is defined as the Company providing over eighty percent (80%) of all warehouse provided goods and inventory for all of the Member's stores, excluding the MP Program and PP Program.

    5.    Therefore, CGI loaned North the proceeds of the Loan for the express purpose of North expanding its store and purchasing additional inventory from CGI.

    6.    North used all of the proceeds from the loan to expand its store and to purchase inventory from CGI.

    7.    North entered into the loan on the basis that CGI would continue to provide North with inventory. In fact, CGI promised that it would provide at least eighty percent of North's inventory.

    8.    North repaid the loan through a deduction from CGI of $1,000 per week, and further through CGI retaining all patronage rebates owed to North.

3

9. North faithfully performed all of its covenants under the terms of the Loan.

10. Despite the fact that North performed all of its covenants and obligations under the loan, CGI did not uphold its duties and obligations to North.

11. CGI initially unilaterally reduced the amount of inventory that it sold to North. CGI then completely stopped providing any inventory whatsoever to North.

12. North did not have another supplier because of its membership in, and financial commitment to, CGI.

13. North was forced to close its store and file a Chapter 7 bankruptcy as a direct and proximate result of CGI failing to abide by its contractual obligation to provide product to North.

14. CGI materially breached its contract with North.

15. CGI's material breach of its contract with North excuses North's performance under the Loan.

16. If North is not liable on its Loan from CGI, then the Guarantors, James and Thomas Cassacio, are also not liable to CGI.

### AFFIRMATIVE DEFENSE II
### Impossibility of Performance

17. Defendants repeat and reallge the allegations contained in paragraphs 1 to 16, and for their allegations to paragraph 17 as if fully set forth herein.

18. CGI's deteriorating financial condition caused CGI to discontinue providing product to North.

19. CGI's financial condition was an unanticipated circumstance that has made performance of the North's promise to repay the Loan vitally different from what should reasonably have been within the contemplation of North and CGI at the time of the Loan.

20. The unanticipated circumstances as alleged herein were not and could not have been anticipated by the parties at the time of the Loan.

21. North did not contribute to the unanticipated circumstances. In fact, North faithfully made all of its Loan payments until it was forced out of business by the unanticipated circumstances of CGI's financial condition and ultimate bankruptcy.

22. North tried all practical alternatives available to permit performance. In fact, North began going to retail stores such as Meier and Costco to purchase inventory just so it would have something on the store shelves to sell. However, there is little to no profit margin in buying product at retail and then selling that same product at retail. Therefore, North was forced out of business as a result of the unanticipated circumstance of CGI's financial condition.

23. If North is not liable on its Loan from CGI due to the impossibility of performance, then the Guarantors, James and Thomas Cassacio, are also not liable to CGI.

## AFFIRMATIVE DEFENSE III
### Frustration of Purpose

24. Defendants repeat and reallge the allegations contained in paragraphs 1 to 23, and for their allegations to paragraph 24 as if fully set forth herein.

25. North was required to purchase at least eighty percent of its inventory from CGI. CGI providing at least eighty percent of North's inventory was condition that must have continued to exist in order for North to repay the Loan. Therefore, the Loan was subject to an implied condition that North was excused from repaying the Loan in the event that CGI stopped or refused to provide inventory to North.

26. If North is not liable on its Loan from CGI due to a frustration of purpose, then the Guarantors, James and Thomas Cassacio, are also not liable to CGI.

## AFFIRMATIVE DEFENSE IV
### Release of Guaranty

27. Defendants repeat and reallge the allegations contained in paragraphs 1 to 26, and for their allegations to paragraph 27 as if fully set forth herein.

28. CGI's extension of the Loan releases James Casaccio and Tom Casaccio from their alleged guaranty obligations pursuant to 810 ILCS 5/3-605.

Wherefore, the Defendants, James Casaccio, Tom Casaccio, Market Fresh, Inc. and Market Fresh North, Inc., deny that the Plaintiff is entitled to any claimed relief. Defendants request that this Court dismiss Plaintiff's Complaint and award attorney's fees and costs to the Defendants. Defendants also request such other and further relief as this Court deems just.

Respectfully Submitted,

/Mark D. Roth/
*Attorney for James J. Casaccio,
Thomas J. Casaccio, Market Fresh,
Inc., and Market Fresh North, Inc.*

Mark D. Roth
Roth Fioretti LLC
311 S. Wacker, Suite 2470
Chicago, Illinois 60606
(312) 922-6262
mark@rothfioretti.com